SALATHIEL NICKERSON *versus* DAVID WHITTIER.

Where an agreement was made between the plaintiff and one of the debtors in a suit, who was surety for the principal debtor, that the plaintiff should proceed to judgment and then levy on the land of the principal debtor and that after such levy, the surety was to purchase the land thus obtained of the creditor in the execution, and security was given for the performance of this agreement; *it was held,* that this did not amount to a payment of the execution by the surety and that consequently the levy was good.

The appraisers, chosen to appraise the value of real estate, should be residents of the county where the appraisal is to be made.

The officer is required by law to notify the debtor, if he live in the county in which such appraisal is to be made, and if not, the officer should return such fact, which will justify his appointment of an appraiser for the debtor, without notice to him.

When an execution is legally levied, and recorded, on land liable to be taken, and the proceedings are duly returned, the creditor is considered as having the actual seizin and possession.

THIS was a writ of entry to recover a parcel of land situate in Belfast. Trial before EMERY J.

The demandant proved that on Jan. 25, 1837, one Alfred Johnson commenced a suit against P. & E. T. Morrill, and Joseph Williamson, as their surety, and on the same day caused "all of defendants' right, title, and interest to their real estate in the county of Waldo," to be attached; that at the July Term of the S. J. Court, 1838, said Johnson recovered judgment in said suit, on which execution was issued on July 9, 1838 — and a levy made of the premises in dispute on the 19th day of the same July, by which said execution was fully satisfied. In the levy of the execution, *Johnson* v. *Morrill & als.* it appears, by the officer's return, that the appraisers were freeholders of the county of Waldo. It does not appear by the officer's return, that E. T. Morrill, as whose, said real estate was taken in execution, neglected or refused to choose an appraiser. The only expression in the return relating to the appraisers being as follows : — "Nath'l M. Lowney chosen by the within named Alfred Johnson, the creditor ; the said James White chosen by myself, and Timothy Chase chosen also by myself, for the within named debtor, E. T. Morrill, who having

no residence or place of abode in this county, (Waldo,) and after the most diligent search not being able to find him within my precinct, I could not notify him to choose an appraiser."

It further appeared, that on July 19, the day of the levy, Johnson by deed released the premises levied upon to J. Williamson, who on the 3d of August, 1838, conveyed by deed of warranty the same to the demandant.

The tenant proved that he held a mortgage for $600, given by Philip Morrill the 6th of Sept. 1829, of his dwellinghouse, and that on the 16th of June, 1837, this mortgage was discharged, and that in the same month said Morrill, being then in failing circumstances, conveyed the same to Joseph Williamson, a creditor of his, by whom the same was sold, and the proceeds thereof received. It further appeared, that on the 13th of June, 1837, E. T. Morrill conveyed the demanded premises to Philip Morrill, who on the 16th of the same June conveyed them in mortgage to secure the sum of $600 — thus exchanging the security on the house for that on these premises.

Alfred Johnson testified, that about the 11th of July, 1838, it was agreed between him and Joseph Williamson, that he, Johnson, should levy the execution in his favor against Morrill & als. on such real estate of said Morrills, as he, Williamson, might designate; and that for that purpose he (Williamson) was to have the control of the execution, and that he or his assigns should have a deed of quitclaim from said Johnson of the land that might be taken on said execution, provided he, Williamson, should pay said Johnson his judgment, and all costs and fees thereon; that this agreement was reduced to writing and signed by the parties, at which time a note for an amount exceeding the execution and all costs, was deposited by Williamson with said Johnson, as security that he, Williamson, would make said purchase, which note was subsequently paid; that Johnson applied enough of it to pay his execution, and the residue he paid to Williamson; that at the time no land was indicated upon which the levy was to be made; that Williamson took the execution, and controlled the officer in

making the levy; and that subsequently he released the premises levied upon to Williamson.

The presiding Judge, on this testimony, instructed the jury to find a verdict for the demandant, reserving to the tenant all exceptions to the plaintiff's title.

*Allyn*, for the tenant.

1. The levy is bad, the attachment being of land owned by the defendants jointly, and not of land owned by either of them in severalty.

2. The appraisers, it appears by the officer's return, were freeholders *of* the county of Waldo, whereas in the statute, the expression is, that the appraisers shall be freeholders *in* the county where the land taken lies; freeholders *in*, denotes the place where the freehold is situate; and freeholders *of*, denotes the place of such freeholders' residence; and so the return is bad.

3. It does not appear that E. T. Morrill neglected or refused to choose an appraiser; without which, the proceedings are defective. St. c. 60, § 27; *Means* v. *Osgood*, 7 Greenl. 146; *Whitman* v. *Tyler*, 8 Mass. R. 284; *Eddy* v. *Knapp*, 2 Mass. R. 154.

4. The execution was paid by Williamson before the extent, and the levy is void. *Allen* v. *Holden*, 9 Mass. R. 138; *Stevens* v. *Morse*, 7 Greenl. 36; *Brackett* v. *Winslow*, 17 Mass. R. 153.

*F. Allen* and *J. Williamson*, contra. The case shows a substantial compliance with the statute. It is not necessary to use the exact words of the statute. *Munroe* v. *Reding*, 15 Maine R. 153. The officer's return shows that due diligence was used to find the debtor; the officer could not notify out of his county, nor was the creditor bound to let his attachment run out. *Howe* v. *Reed*, 3 Fairf. 515; *Buck* v. *Hardy*, 6 Greenl. 164; *Bugnon* v. *Howes*, 13 Maine R. 154.

The execution was not discharged at the time of the levy. Johnson had received nothing, nor had Williamson paid any thing. The whole matter was conditional, and whether Wil-

liamson was ever to have the property levied upon, depended upon his compliance with those conditions.

The opinion of the Court was by

SHEPLEY J. — The title of the tenant is derived from Ephraim T. Morrill, who on the thirteenth of June, 1837, conveyed the premises to Philip Morrill, who on the sixteenth of the same month conveyed in mortgage to the tenant. The consideration of the latter conveyance was the discharge of a former mortgage held by the tenant on the dwellinghouse of the mortgagor, which was afterward conveyed to Joseph Williamson. Before the tenant released his mortgage on the dwellinghouse and received one on the premises instead of it, an attachment had been made on the twenty-fifth of January, preceding, on a writ in favor of Alfred Johnson against Ephraim T. Morrill, Philip Morrill and Joseph Williamson, of all their real estate in the county of Waldo. That suit was prosecuted to judgment and the execution issued thereon in consequence of an agreement between Messrs. Johnson and Williamson was levied on the demanded premises for the benefit of Williamson, who was surety for the Morrills. Johnson released his title acquired by the levy, to Williamson, who conveyed with covenants of warranty to the demandant. The attachment having been made before the grantor of the tenant acquired any title, the demandant must prevail, if the levy was legally made and the title under it passed to him. The effect may be, that the tenant will lose a debt, which was secured, and that Williamson will be saved from a loss as surety, where he had no security. And this after he had been benefited by a discharge of the mortgage on the dwellinghouse. The agreed statement does not impute any fraud, and such results cannot change the law or the legal rights of the parties.

It is contended, that the execution was satisfied before the levy was made. The written agreement between Messrs. Johnson and Williamson was produced at the argument and received by consent. The operation of it was the same as an assignment of the judgment and execution to Williamson, he

giving security to Johnson, that his debt should be paid. The note of Carlton was pledged as collateral security, that Williamson would pay, not delivered to Johnson in payment. In the cases cited by the counsel for the tenant, there was a receipt of money for the purpose of paying the debt. Here the debt was not in fact paid to the creditor until the note deposited as security was paid.

The return of the officer, who made the levy, is alleged to be defective in stating, that the appraisers were freeholders *of* instead of *in* the county. The argument is, that it was intended, that the appraisers should not only be freeholders, but that their estates should be situate in the county. Such a construction would allow the creditor and officer to select appraisers from a distant part of the State or even out of it, and ignorant of the value of land so far, as they would not be informed of it by being owners of land in the county. And they might have become owners by taking it in payment of debts in a manner that would afford little information. Such a selection might be expensive and oppressive to the debtor, who also might select an appraiser resident without the officer's precinct, and where he could not notify him. The design of the statute appears to have been, that they should be freeholders, and that they should be residents within the county. Neither party could then act oppressively toward the other, the officer could notify, and the appraisers might be supposed to have a better knowledge of the value of lands in the county where they resided.

Another alleged defect in the levy is, that the officer does not in his return state, that the debtor neglected or refused to appoint an appraiser, although he appointed two himself. When the officer is required to notify the debtor to appoint an appraiser he must return, that he has neglected or refused to appoint to prove his authority to appoint one for him. But there are cases, in which our statute does not require the debtor should have notice to appoint. And in those cases it is necessary, that the officer should return such facts as would prove his authority to appoint without notice to the debtor. The

officer is required to notify " if the debtor be living in the county, in which such land lies." In this case the officer does return such facts as prove his authority to appoint for the debtor ; and that is all that the statute requires. The officer not being required to notify the debtor, because he did not live within the county, and not having done so, could not truly state in his return, that he had neglected or refused to choose.

Another objection insisted upon at the argument is, that the title acquired by the levy, was not conveyed to the demandant, because Williamson and Johnson were disseized at the time they conveyed. When an execution is legally levied on lands liable to be taken, and the proceedings are duly returned and recorded the creditor is considered as having the actual seizin and possession. *Gore* v. *Brazier,* 3 Mass. R. 537. There is no proof in this case to rebut the legal presumption of its continuance in the creditor and his grantee until after the conveyances were made.

*Judgment on the verdict.*